HENRY L. KAUFMANN *vs.* WILLIAM H. SYDEMAN & another.

Middlesex.   November 17, 1924. — February 7, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Agency*, Undisclosed principal.   *Sale*, Warranty.

At the hearing by a judge without a jury of an action for breach of warranty of quality of goods alleged to have been sold by the defendant to one S, who had assigned his rights under the contract of sale to the plaintiff, it appeared that the plaintiff had sought to purchase the goods from the defendant; that the defendant had refused to sell to the plaintiff, stating that he had agreed to confine his sales to a former partner of the plaintiff; that the plaintiff then stated the circumstances to one H and asked him to purchase the goods for him from the defendant but not to disclose the plaintiff's connection with the transaction; that H refused to act because of the condition of the plaintiff's credit, and the plaintiff then got S to act as principal with H, H making the purchase in his own name, and both S and H being paid a commission by the plaintiff; that after the goods were delivered and paid for by H and he had been reimbursed by S, it was discovered that there was a breach of warranty by the defendant, formal demand was made and, after the assignment by S to the plaintiff, the action was brought.   The defendant did not know of S's connection with the transaction until complaint as to quality was made, nor of the plaintiff's until after the action was begun.   The judge found that the sale was made by the defendant to H as "undisclosed agent for" S.   Other facts found by the judge did not require a finding that the defendant would have gone on with the sale had he known of the relation of the plaintiff to it, nor did they require a finding that he would not have gone on had he so known.   The judge, without stating any reasons therefor, refused requests for rulings in substance that the plaintiff could not recover if, through the subterfuge of using H as principal, the defendant was misled into making the sale against his express intention and wish.   There was a finding for the plaintiff and the judge reported the action to this court for determination, judgment to be entered on the finding if his rulings were right, and

otherwise "a new trial is to be had or judgment entered for the defendant as" this court should determine. *Held,* that

(1) If the defendant would not have made the contract of sale had he known of the relation of the plaintiff to it, the warranty of quality could not be enforced;

(2) If the defendant at the time of his dealings with H was indifferent with regard to the plaintiff's connection with the transaction, the warranty of quality could be enforced;

(3) It not appearing from the record upon which basis of fact the judge proceeded in dealing with the requests for rulings, it could not be ascertained whether his action with regard to the requests was correct;

(4) On the terms of the report, it was necessary that the finding be set aside and a new trial be had.

CONTRACT, with a declaration in two counts, the plaintiff alleging himself to be the assignee of rights of S. Shapinsky and Company which arose by reason of the breach by the defendants of a warranty of quality of binder cloth sold to S. Shapinsky and Company under the provisions of a contract made between S. Shapinsky and Company, "by its agent," and the defendants. Writ dated November 30, 1921.

In an amended answer the defendants alleged that "the plaintiff is and was at all times the principal in the matters referred to in the plaintiff's declaration, but that the plaintiff's connection therewith was concealed and misrepresented at his request, he well knowing that the defendants were unwilling to sell to or deal with or contract with the plaintiff."

In the Superior Court, the action was heard by *Weed,* J., without a jury. Material evidence is described in the opinion. The defendants asked for the following rulings:

"1. The evidence presented does not show a contract between the defendant and S. Shapinksy and Company.

"2. The negotiations between the Hub Raincoat Company and Sydeman Brothers did not result in the formation of a contract for there was no mutual assent.

"3. The relation between the Hub Raincoat Company and the plaintiff was that of seller and buyer.

"4. In negotiating the alleged contract with Sydeman Brothers the Hub Raincoat Company acted as principal and not as agent for S. Shapinsky and Company.

"5. The relation between the Hub Raincoat Company and S. Shapinsky and Company was that of creditor and surety.

"6. If Simmons expressly stated to the defendants that he was purchasing as principal and the defendants had, prior thereto, notified Kaufmann that they would not contract with him and the defendants, in fact, would not have contracted with Kaufmann, then the plaintiff cannot recover.

"7. If Simmons was, in fact, the agent of Kaufmann and the defendants had, prior thereto, notified Kaufmann that they would not contract with him, and the defendants, in fact, would not have contracted with Kaufmann, then the plaintiff cannot recover.

"8. If, by reason of a prior controversy between the plaintiff and the defendants, or their relatives, the plaintiff knew that the defendants would not contract with the plaintiff and instructed Simmons to conceal the plaintiff's connection with the matter and to represent that Simmons was acting in the matter as principal and selected Simmons because Simmons was on friendly terms with the defendants and was likely to receive more favorable consideration in trade with the defendants than any other person, and the defendants had notified the plaintiff that they would not, under any circumstances, contract with him, then the plaintiff is not entitled to recover.

"9. If the plaintiff arranged with S. Shapinsky and Company that the binder cloth might be charged to S. Shapinsky and Company for the reason that Simmons would not take the plaintiff as a credit risk, and if the plaintiff was in all other respects the principal in the negotiations between the plaintiff and the Hub Raincoat Company, and if, by reason of a prior controversy between the plaintiff and the defendants or their relatives, the plaintiff knew that the defendants would not contract with the plaintiff and instructed Simmons to conceal the plaintiff's connection with the matter and to represent that Simmons was acting in the matter as principal and selected Simmons because Simmons was on friendly terms with the defendants and was likely to receive more favorable consideration in trade with the defendants than any other person and the defendants had notified the plaintiff that they would not, under any circumstances, contract with him, then the plaintiff is not entitled to recover."

At the close of a recital of facts found by him and described in the opinion, the judge stated: "I found on the foregoing facts that the sales were made by the defendants to Simmons, as the undisclosed agent of Shapinsky, and I denied the" rulings above set out.

There was a finding for the plaintiff in the sum of $778.77. The judge reported the action to this court "on the stipulation that if my said rulings were right and if on the foregoing facts the plaintiff is entitled to recover, judgment is to be entered for the plaintiff in the sum of $710.45, with interest from the date of the writ. Otherwise, a new trial is to be had or judgment entered for the defendants as the Supreme Judicial Court shall determine."

*J. J. Kaplan,* for the defendants.

*F. L. Norton,* for the plaintiff.

WAIT, J.    This case is before us upon a report by the judge who heard it without a jury in the Superior Court.    The plaintiff sues as assignee of S. Shapinsky and Company of Louisville, Kentucky, for damages caused by failure of the defendant to deliver goods of the quality required on a sale by sample alleged to have been made by them to S. Shapinsky and Company through an agent, Simmons.    The defence rests on the ground that the plaintiff is the undisclosed principal of both Shapinsky and Simmons; that they had refused to make sales to the plaintiff; that they had no knowledge until this suit was brought that the real party in interest was the plaintiff; and that, had they known it, they would have refused to make the sale.

The material facts reported are as follows: Kaufmann was a dealer in hospital supplies at Boston.    He had been associated in business with a brother-in-law of the defendant Sydeman, one Harris, who had put an end to the association. In early 1919, the defendants bought from the United States government a large amount of "binder" cloth.    Kaufmann wished to obtain from them a quantity of the cloth to be prepared for sheeting.    They refused to sell to him, saying that they had agreed to confine their sales of binder cloth for sheeting purposes to Harris.    Kaufmann made no attempt to purchase from Harris.    He applied to Simmons, a

manufacturer of raincoats, at Boston, doing business as the
Hub Raincoat Company, and on friendly terms with the de-
fendants, to order seven to ten thousand yards of "binder"
cloth.   Kaufmann told Simmons that he was unable to
purchase from the defendants himself and asked him not to
disclose his connection with the matter.   Simmons declared
that Kaufmann's credit was not sufficient to handle so large
a transaction.   Kaufmann, thereupon, got his father-in-law,
S. Shapinsky, to act as principal, arranging that Simmons
should have $100 and one half the cash discount (which
proved to be about $67), and Shapinsky, a commission of
ten per cent of the purchase price, for their remuneration.
In November, 1919, Simmons called the defendant by tele-
phone, inquired about the binder cloth, said he wished to
buy for himself, obtained a price, asked for a sample, and
a few days later, after getting the sample, ordered seven
thousand yards.   Later still he ordered three thousand yards
more at the same price.   The goods were billed and shipped
to Simmons in November and December, 1919.   Simmons
paid the bills; and was reimbursed and paid for his services
by Shapinsky.   The goods, by arrangement with Kaufmann,
were delivered direct to parties employed by Kaufmann to
rubberize the cloth for him; and Shapinsky agreed that the
title should go with the goods to Kaufmann.   When the
goods were opened for manufacture, defects in quality ap-
peared.   Shapinsky wrote Simmons in complaint.   The letter
eventually was sent to the defendants.   They refused to
recognize any liability, and claimed that the sale was without
guarantee of quality or condition.   The defendants had no
information of Kaufmann's connection with the transaction,
and did not learn of it until this suit was begun in November,
1921.   Nor did they know of Shapinsky's connection until
the complaint was made through Simmons.

The judge found that a sale was made to S. Shapinsky and
Company; that S. Shapinsky was the undisclosed principal
of Simmons; that there was no express warranty of quality
or condition; that the sales were made by sample; that to
the extent of one thousand ninety-three yards the goods
did not correspond with the sample in quality; that no trade

uses or customs negatived or varied the warranty implied in a sale by sample; that the goods were accepted by Shapinsky; that within a reasonable time Shapinsky gave notice to the defendants of the breach of warranty and that the damage was $710.45. There is no express finding that any inquiry was made of Simmons by the defendants in regard to his purchase. There is no specific finding whether or not the defendants would have refused to go on with the transaction had they known the facts. No contention is made that G. L. c. 231, § 5, which authorizes suit in his own name by one who holds a written assignment of a chose in action, has not been complied with.

The judge denied nine rulings requested by the defendants. The report does not state to what extent his action thereon was determined by his decision of fact or of law. He made a general finding for the plaintiff assessing damages in the amount stated. Under the general rule, since all the evidence is not reported, all inferences which can be made in support of that finding must be made.

The finding that Shapinsky was the undisclosed principal of Simmons, imports a finding that no relationship of agency toward Kaufmann was assumed by Simmons. It is conceivable that Simmons regarded himself as acting only for Shapinsky; that he declined to act for Kaufmann because he did not consider him sufficiently responsible financially, and, nevertheless, felt entitled to obtain a profit for himself by making a purchase for Shapinsky, without regard to Shapinsky's purposes or his connection with Kaufmann.

There was a breach of the warranty implied in the sale by sample. The defendants are in default. They have sold their goods and they have received their price — a larger amount than they were justly entitled to. They seek to retain this unjust gain and, by showing tricky conduct by Kaufmann, to leave the loss to him.

The facts reported justify a finding that both Simmons and Shapinsky were agents of Kaufmann, and that Simmons lied at the request and for the purposes of Kaufmann. They do not require a finding that the defendants would have gone on; nor do they compel a finding that they would not

have gone on, had they known all the facts. Their obligation to Harris, if it existed at all, may have ended before the dealings with Simmons began. If the judge took the view that Simmons and Shapinsky were tools of Kaufmann; that Shapinsky was undisclosed principal for Simmons, but also, and as part of a single transaction, undisclosed agent for Kaufmann as undisclosed principal one step further removed; that the defendants were in earnest in refusing to sell to Kaufmann and would have refused to deal with Simmons had they known he was acting remotely for Kaufmann, then he was wrong in refusing the defendants' requests.

In a dictum in *Humble* v. *Hunter,* 12 Q. B. 310, 317, Lord Denman declared " You have a right to the benefit you contemplate from the character, credit and substance of the person with whom you contract." The remark is *obiter* but it has been used to support decisions that no contract is made where one who has refused to deal with a particular person has gone through the form of contracting with a third party who turns out to be an agent for the repudiated person as undisclosed principal, and who has concealed that fact. *Winchester* v. *Howard,* 97 Mass. 303. *Boston Ice Co.* v. *Potter,* 123 Mass. 28. Chapman, J., in *Winchester* v. *Howard, supra,* stated as law that " a man's right to refuse to enter into a contract is absolute, he is not obliged to submit the validity of his reasons to a court or jury." It follows, logically, that one cannot be held to have contracted with a person whom he has refused to accept as party to a contract. *Rodliff* v. *Dallinger,* 141 Mass. 1. *Gordon* v. *Street,* [1899] 2 Q. B. 641. *Cundy* v. *Lindsay,* 3 App. Cas. 459. The introduction of an undisclosed principal is not to be permitted to defeat this right. Courts of equity refuse to order specific performance when an agreement has been made with an agent who is acting for the objectionable person as undisclosed principal. *Archer* v. *Stone,* 78 L. T. R. (N. S.) 34. *Kurinsky* v. *Lynch,* 201 Mass. 28.

A different situation arises, however, when one, who deals with an agent for an undisclosed principal, is in fact indifferent about the real party in interest. *Smith* v. *Wheatcroft,* 9 Ch. Div. 223. In such circumstances a contract is really

made. The principle is stated by Pothier on Obligations, (3d am. ed.), Part I, c. 1, art. 3, § 1: "When the consideration of the person with whom I suppose myself to contract, forms no ingredient in the contract, and I should equally have made the contract with any other person, the contract would be valid." There a mistake about the person is immaterial. "Although one may have been misled by the pretence of the agent that he was dealing for himself, yet if he has been in no manner injured he cannot object to being made responsible to the principal." Devens, J., in *Sheehan* v. *Marston*, 132 Mass. 161, 162, citing *Selkirk* v. *Cobb*, 13 Gray, 313.

The judge in the case before us has found that Shapinsky was Simmons's principal, and that Shapinsky accepted the goods; and he may have reached this conclusion because the evidence satisfied him that, whatever Sydeman once told Kaufmann, he was really indifferent at the moment of the dealings with Simmons, whether Simmons was acting for himself as he said or for some one else. If he was satisfied of this, he was acting properly in refusing the defendants' requests, and in finding for the plaintiff.

Our difficulty arises from being unable to say from the report upon which theory he acted. In *Clarke* v. *Massachusetts Title Ins. Co.* 214 Mass. 31, and *DeYoung* v. *Frank A. Andrews Co.* 214 Mass. 47, we held that a refusal to give a request to which a party was entitled was error requiring a new trial, although the finding made could be sustained on the evidence. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 17, 18, 19. The defendants were entitled to the rulings requested in a possible view of the evidence; and, though the finding may have been right, we are unable, on the report, so to determine. As a result, the order must be, finding set aside and a new trial to be had.

*So ordered.*