## COMMONWEALTH *vs.* JORDAN S. ORLER.

Suffolk.     December 1, 1924. — April 15, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Larceny. Pleading, Criminal,* Indictment, Bill of particulars. *Fraud. False Pretences. Evidence,* Relevancy and materiality, Competency, Expert, Letter, Inference. *Practice, Criminal,* Indictments tried together, Exceptions.

A motion to quash an indictment in twelve counts for larceny from a woman of certificates of corporate stock on the ground that, as supplemented by bills of particulars, it did not set forth any crime known to the law, and failed to describe fully, plainly, substantially and formally the crime or crimes with which it purported to charge the defendant,

properly may be denied, where the indictment followed the form set out in G. L. c. 277, § 17, and two bills of particulars stated that the theft was by false representations, stated the place of the representations as in Boston and New York and the times as between August 12, 1916, and June 14, 1917, and described in detail many false representations which were not of matters of opinion.

At the trial of the indictment above described, it appeared that the woman from whom the thefts were alleged to have occurred had died, and it was *held*, that

(1) There was no error in admitting in evidence a detailed statement furnished by the defendant in 1917, before the indictment, to an attorney at law representing the husband of the woman;

(2) There was no error in admitting in evidence testimony given by the defendant at a hearing before a master in a contest by the woman's husband for appointment as administrator of her estate in this Commonwealth, at which the defendant described his relations with and transactions for the woman;

(3) It was not improper to admit in evidence a certificate of shares of a certain corporation countersigned by a firm name under which, the evidence tended to show, the defendant carried on business, in connection with evidence that the stock was of no value, was sold to the woman by reason of false representations by the defendant after he had induced her, for the purpose of procuring money to carry through that transaction, to sell stock of very substantial value belonging to her.

At the trial above described, the judge admitted in evidence business letters, written by the defendant and addressed to the woman and relating to the transactions in question, which were produced by an attorney representing the husband of the woman, who had been appointed administrator of her estate in another State and had sought such appointment in this Commonwealth, although there was no direct evidence that the letters had been mailed, postage prepaid and properly addressed to the woman. *Held*, that

(1) Giving due weight to the presumption of innocence and to the common knowledge of mankind as to the usual course of business, it could be inferred that these letters reached and were read by the woman;

(2) There was no error in the admission of the letters in evidence.

At the time when the letters of the defendant above described were admitted in evidence, there were being tried with the indictment against the defendant indictments for larceny in twelve counts against the defendant and two others and a further indictment against all of them for conspiracy to defraud. At the close of the evidence, verdicts for the defendants on the indictments for conspiracy and for the associates of the defendant on the joint indictment for larceny, and for the defendant on nine of the twelve counts for larceny in the indictment in question, were entered by order of the court; but no motion then was made by the defendant to limit or exclude any of the evidence in the letters which had been admitted. *Held*, that, the letters being competent when admitted, they remained in the case as competent evidence entitled to full probative force.

There was no variance between the proof and the counts of the indictment above described which were submitted to the jury.

Verdicts of guilty, on the three counts of the indictment above described which were submitted to the jury, were warranted since the evidence supported the essential charges and, while in the evidence there was much indicating that mere expressions of opinion by the defendant induced the woman to spend her money to purchase worthless securities, there also were statements of fact which might have been found to have been made by the defendant fraudulently and to have induced her to act to her harm.

INDICTMENT, found and returned on May 7, 1921, charging the defendant in twelve counts with larceny of certificates of corporate stock, as described in the opinion.

Each count of the indictment as originally framed charged that Jordan S. Orler, John D. Beyer and Jane Butland "did steal" the certificates in question. On a motion by the defendant Orler for particulars specifying whether the theft was by forceable taking, by false representation, or by embezzlement, the Commonwealth filed two bills of particulars, the first in substance stating that the thefts were by false representations at Boston and New York between August 12, 1916, and the dates set forth in the various counts of the indictment, and the second setting out specifically and in detail the nature of the false representations.

The case came on to be tried before *Keating*, J., and the defendant Orler presented the motion to quash the indictment described in the opinion. The motion was denied.

Richard J. Cotter, Esquire, an attorney at law who had acted for the husband of Mrs. Kenilworth, testified in substance that on or about July 5, 1917, the "detailed statement furnished by the defendant," referred to in the opinion, was given to him at his request by the defendant or his counsel.

The evidence as to the sources of knowledge of the "expert on the value of stock," referred to in the opinion, was as follows: Elmer L. Ditmars, called by the Commonwealth, testified that he had been a "salesman with Lee, Higginson and Company" for about twelve years; that they have a "statistical library that is probably as large as any in New England, or in the country, in which we have on file complete

data of any corporation of any size," which consists "of a great many pamphlets, books, standard publications on financial matters, balance sheets, — in fact, practically everything of that sort, — every sort of information that we need to find out whether a security is good or not"; and that by reason of his experience in the course of his employment he could "state the values of the various kinds of stock."

Other material evidence is described in the opinion. At the close of the evidence the defendant Orler requested the judge to rule and instruct the jury as to each of the twelve counts that they must return a verdict of not guilty, and further requested the following rulings:

"18. That there is no evidence that the securities named in the indictment were ever obtained by any of the defendants.

"19. There is no evidence that any statements or pretense made by any one or all of the defendants was false at the time that Emma A. Martin parted with the control of the stocks named in any of the counts of the indictment."

The requests were refused. By order of the judge, the jury found the defendants Beyer and Butland not guilty and the defendant Orler not guilty on all excepting the sixth, seventh and twelfth counts. On those counts the defendant Orler was found guilty. He alleged exceptions.

The case was argued at the bar in December, 1924, before *Rugg,* C.J., *Braley, Pierce,* & *Wait,* JJ., and afterwards was submitted on briefs to all the Justices.

*J. F. Barry,* for the defendant.

*M. Caro,* Assistant District Attorney, for the Commonwealth.

RUGG, C.J. The defendant and two other persons were charged in one indictment consisting of twelve counts with larceny of the property of one Emma A. Martin, otherwise known as Emma A. Clark, and in a second indictment of one count with conspiracy to steal the property, moneys, goods and chattels of the same person. A verdict of not guilty was ordered on the indictment for conspiracy, and for all the defendants except Orler on the indictment for larceny. The case is here on the exceptions of Orler to the overruling

of a motion to quash the indictment, and to rulings on the admission of evidence, and to the refusal of the judge to instruct the jury that there was no evidence that the securities named in the indictment were ever obtained by the defendant, and to the refusal to direct a verdict of not guilty on each count.

On the defendant's motion under G. L. c. 277, § 10, a bill of particulars was filed, and subsequently the Commonwealth filed further particulars. The defendant moved to quash because the indictment as supplemented by the bills of particulars did not set forth any crime known to the law, and failed to describe fully, plainly, substantially and formally the crime or crimes with which it purported to charge him. The motion was denied rightly. The indictment as originally drawn followed G. L. c. 277, § 17, and the bills of particulars gave the defendant sufficient information of the nature of the crime charged. *Commonwealth* v. *Wakelin*, 230 Mass. 567, 571. *Commonwealth* v. *Kozlowsky*, 238 Mass. 379, 383.

We are concerned only with counts six, seven and twelve, on which the defendant was convicted, verdicts in his favor having been ordered on the other counts. The sixth count charges the stealing on November 28, 1916, of "one certificate for shares of stock of the Bates Manufacturing Company of the value of seven thousand dollars . . . . " The seventh count charges the theft on January 26, 1917, of "one certificate for shares of stock of the Edison Electric Illuminating Company of Boston of the value of four thousand eighty dollars. . . . " The twelfth count charges that on June 14, 1917, the defendant did steal "one certificate of shares of stock of one Danforth Clark & Co., of the value of twenty-six thousand two hundred and fifty dollars. . . ." The Commonwealth contended that all of this property was obtained through the fraud of the defendant practised upon Emma A. Clark, otherwise called Emma A. Martin, or Emma A. Kenilworth, who died June 12, 1917, in New York City where she was living under the name of Kenilworth. She will be referred to hereafter under the last name. It had the burden of proving beyond reasonable doubt that by the false repre-

sentations of the defendant, she was induced to part with her property, and that such representations were made with intent to defraud, and that the purpose was accomplished. G. L. c. 266, § 30.

We find no error in the admission in evidence of the detailed statement furnished by the defendant of his purchase and sale of various stocks including stocks of the description in the indictment, on the orders of Mrs. Kenilworth, or of the testimony he gave at the hearing before the master in the contest by Kenilworth for the appointment of an administrator, as to his relations and transactions with the intestate. The certificate for ten thousand shares of Southern Oil Companies in the name of Emma A. Martin also was rightly admitted on the evidence of the administrator of her estate. It was countersigned by "J. S. Orler & Company," the name under which, as the jury might have found, the defendant carried on business. The jury could find on all this evidence that he received and disposed of stocks or property described in the sixth, seventh and twelfth counts. There was also evidence properly admitted of the value of the stock of the Bates Manufacturing Company, and of Danforth, Clark & Company. It could have been found by the jury on admissible evidence that the defendant received certificates of stock in the Bates Manufacturing Company, in the Danforth, Clark & Company and in the Edison Electric Illuminating Company of Boston, all of very substantial value, from the New England Trust Company on an order signed by Mrs. Clark, being one of the names of Mrs. Kenilworth, and converted those stocks to his own use and caused to be issued in her name stock of the Southern Oil Companies, organized and promoted by him, and bonds and stock of the Victoria Mining Company, all of no market value.

The evidence of the expert on the value of stocks was admissible, even though some of the sources of his knowledge may not have been competent evidence. *National Bank of Commerce* v. *New Bedford,* 175 Mass. 257, 261.

Several letters were admitted in evidence subject to exception. The facts respecting these letters were or might have been found to be that they were written on the business

letterheads of the defendant, were directed to Mrs. Kenilworth at the street, number and apartment in New York where she lived and was visited twice a month or oftener by the defendant, and were signed by the defendant. The substance of the letters related to stocks either owned originally by Mrs. Kenilworth or substituted by the defendant for those originally owned by her. Other evidence tended to show that the defendant was corresponding with her at this period. The letters were produced at the trial by the attorney for Mr. Kenilworth, alleged husband of the woman to whom they were addressed. He testified that he received the letters from Mr. Kenilworth, for whom he was acting as counsel in his petition for appointment in this Commonwealth as administrator of the estate of the Mrs. Kenilworth named as addressee in the letters, and that Mr. Kenilworth was appointed administrator of her estate in the state of New Jersey but not in this Commonwealth. It appeared from evidence, rightly admitted, of testimony given by the defendant in another proceeding touching his relations with Mrs. Kenilworth, that he never had seen her husband at any of his visits to her at her home in New York; that on one of these visits she had said to him that she was married but received no support from her husband; that he called on Mrs. Kenilworth at her New York home fortnightly or oftener from August or September, 1916, until the fourth or fifth of June, 1917, when he last saw her, and that on all these occasions she appeared to be bright "and very capable in every way" and interested in the subject of her investments.

These were business letters signed by the defendant apparently in ordinary course. They passed out of his possession in some way, because they were produced by a third person. In the absence of any evidence to that end, it could not have been found that they were stolen or taken surreptitiously from him. It was said by Chief Justice Knowlton in *Doherty* v. *Ayer*, 197 Mass. 241, at page 248: "Presumptions both of law and fact are always in favor of innocence." *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50. *Jubilee Yacht Club* v. *Gulf Refining Co.* 245 Mass. 60, 62.

*Korbly* v. *Springfield Institution for Savings*, 245 U. S. 330, 336. The defendant was in regular correspondence with the person to whom they were addressed about the subject matters discussed in the letters. The rational inference is that they passed out of his possession into the possession of the person to whom they were directed, and that they either went from Boston to New York in the ordinary course of mail or rightly were delivered to her in some other way. It is a rational inference that they were opened by the recipient, if they were received by her. It is reasonable to infer that the husband, who under the law was entitled *prima facie* to administer her estate under G. L. c. 193, § 1, secured possession of these letters rightly and in ordinary course. No person was more suitable than the husband to take possession of all the estate and property of a deceased wife, including her business letters. *Perkins* v. *Ladd*, 114 Mass. 420, 422. *Pettengill* v. *Andrews*, 167 Mass. 307.

If due weight is given to the presumptions of innocence, to which reference already has been made, and to the common knowledge of mankind as to the usual course of business, it could be inferred that these letters reached and were read by the deceased Mrs. Kenilworth. It does not ordinarily happen that business men write letters as to commercial transactions to those with whom they are having constant transactions of that nature and let them in perfect form get out of their possession, into the hands of the one who naturally would have such possession if regularly mailed, in any other way than by mailing in the ordinary course or by delivery in some other rightful way. It was within the province of the jury, in the opinion of a majority of the court, to find that the rational explanation of the production of these letters, actually signed by the defendant, was that the defendant sent or took them to Mrs. Kenilworth and that they were actually received by her. The further inference might have been drawn that she read them and that they had upon her mind the natural influence likely to be produced upon a person of her character as shown by all the evidence. *Commonwealth* v. *Jeffries*, 7 Allen, 548, 563.

It follows that there was no error in the admission of the

letters in evidence.   There is nothing at variance with this conclusion in the numerous decisions holding that, where nothing else appears, it must be shown that a letter properly directed, postage prepaid, has been deposited in the mail before the inference can be drawn that it reached the addressee. *Huntley* v. *Whittier*, 105 Mass. 391.   *Eveland* v. *Lawson*, 240 Mass. 99.   *Prudential Trust Co.* v. *Hayes*, 247 Mass. 311, 314.

When Mrs. Kenilworth first met the defendant, she owned securities of great value, which had been kept for a substantial period of time in the vaults of the New England Trust Company.   About nine months later, at the time of her death, the defendant had obtained upon her orders all of these securities and substituted for them others which had little or no value.   Many of the substituted securities held by him at the time of her death were stocks and bonds in enterprises which he was promoting or was interested in. It could be found that the defendant knew that most of the stocks and bonds purchased by him for Mrs. Kenilworth were of little or no value.   It is manifest from the facts in evidence that the defendant intended to get possession of Mrs. Kenilworth's estate; that he represented to her that he would replace the securities which she owned and which bore a small return by other securities which paid larger dividends and thereby substantially increase her income.   The jury could say on the facts that the securities purchased for Mrs. Kenilworth were called to her attention by the defendant; that she knew nothing about them except what he told her, and that they were purchased at his suggestion with money derived from the sale of her old securities.   It is difficult to explain the series of transactions on any other reasonable theory than that they were brought about by the defendant.   No other reason for her doing what she did is shown or suggested.

When the rulings as to the admission of evidence were made, three defendants were being tried on one indictment for conspiracy to steal the property of Mrs. Kenilworth, and also on twelve counts of another indictment charging them with larceny of her property by false pretences.   It was not until the close of the testimony that the court directed a verdict of not guilty for all of the defendants on the con-

spiracy indictment, and for the defendants Beyer and Butland on all the counts of the indictment for larceny, and for the defendant Orler on all counts in the larceny indictment except three. At the time when the directed verdicts were ordered, no request was made as to the exclusion or limitation of evidence which had been admitted. If competent on any issue being tried, it remained in the case as competent evidence entitled to full probative force. The letters introduced all were competent at the time they were admitted.

There was no error in the admission or exclusion of evidence. But it is not necessary to examine the exceptions with further minuteness in this particular.

The letters contained expressions of opinion which, as the jury were instructed, had no probative value. It is not necessary to analyze the letters in detail. It is enough to say that, when read together in the light of other competent evidence, the letters had a tendency to show that Mrs. Kenilworth had been induced, by fraudulent representations made by the defendant, to cause to be handed over to him stocks of substantial value and to accept from him in their place stocks known by him to be of no value.

There was no variance between the proof and the counts of the indictment which finally went to the jury. There was evidence tending to support the essential charges.

There was evidence sufficient for the consideration of the jury on all three of the counts finally submitted to the jury. The requests for a directed verdict in favor of the defendant on these counts were denied rightly. There was no error in the denial of the requests for instructions. While in the evidence there is considerable indicating mere expressions of opinion by the defendant, there are statements of facts which might have been found to have been made fraudulently and to have induced Mrs. Kenilworth to act to her harm. *Commonwealth* v. *Coe,* 115 Mass. 481. *Commonwealth* v. *Stevenson,* 127 Mass. 446. *Commonwealth* v. *Farmer,* 218 Mass. 507, 510, 511.

All the exceptions have been examined with care. There is no reversible error.

*Exceptions overruled.*