COMMONWEALTH *vs.* CHARLES S. ALBERT.

Hampden.   September 18, 1941. — February 24, 1942.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Bribery. Public Officer. Municipal Corporations,* Officers and agents.
*Practice, Criminal,* Exceptions: whether error shown. *Error,* Whether
error shown.

Evidence merely that a municipal officer, who was a member of a board
having power to contract for the municipality as to certain public
improvements, in bad faith, after the award of such a contract,
threatened the contractor that, unless the commission on a bond
required of the contractor be paid to a broker whom the officer named,
the contract would not be executed for the municipality, and that
the commission was so paid, did not warrant a finding that such
officer had any proprietary or pecuniary interest in the commission
upon which he could be found guilty of violation of that part of § 8
of G. L. (Ter. Ed.) c. 268 imposing a penalty for corruptly requesting
or accepting a gift or gratuity or promise thereof.

The benefit to be conferred upon a municipal officer through the per-
formance of a promise "to do an act beneficial to him," corruptly
requested by him within § 8 of G. L. (Ter. Ed.) c. 268, need not be a
pecuniary benefit; it is sufficient if a reward or personal advantage
will accrue to him from such performance and that he considers the
value thereof so highly as to permit it to influence his official con-
duct, provided the reward or advantage is in fact something of value
as that term is generally understood.

A municipal officer who was one of a board having power to contract for
the municipality as to certain public improvements might be found
guilty under § 8 of G. L. (Ter. Ed.) c. 268 of corruptly requesting
from a contractor, to whom the board had awarded a contract, a
promise to do an act beneficial to the officer as the price for his exe-
cuting the contract, on evidence that, in bad faith, he at first had
objected without adequate reason to a bond offered by the contractor
and had stated that no bond would be acceptable unless procured
through a broker whom he named, but that later he had withdrawn
his objection and had executed the contract upon an agreement being
made that the commission on the bond be paid to that broker and
that the commission had been so paid.

Error requiring a new trial, after a general finding by a judge without a
jury of guilt under charges of the crimes described in § 8 of G. L.
(Ter. Ed.) c. 268, was disclosed by a record showing that, while such
finding was warranted under the charge based on one provision of

the statute, the trial judge erroneously had refused to rule that it was not warranted under the charge based on another of its provisions and had not stated upon what charge his finding was made.

INDICTMENT, found and returned on September 25, 1939.

The case previously was before this court and, in a decision reported in 307 Mass. 239, judgment was reversed. The second hearing was by *Collins*, J.

*G. J. Callahan*, (*C. S. Lyons & E. P. Brooks* with him,) for the defendant.

*J. F. Kelly*, Assistant District Attorney, for the Commonwealth.

RONAN, J. The defendant, a municipal officer of Springfield, has been found guilty by a judge of violating G. L. (Ter. Ed.) c. 268, § 8. The indictment charged that he "did corruptly request a gift or gratuity or a promise to make a gift or to do an act beneficial to him under an agreement or with an understanding that his vote" would be given in a particular manner upon a matter that was then or would be brought before him in his official capacity. The defendant appealed from the finding of guilty and the case is here with a transcript of the evidence, a summary of the record, and assignments of error based upon refusals to grant certain requests for rulings.

It was undisputed that the defendant was a member of the city council of Springfield during 1936 and, with the mayor and an alderman, composed the board of supervisors; that the board, among other powers, was authorized to contract in behalf of the city for certain public improvements including the construction of highway bridges; and that, early in January, 1936, it advertised for the proposals for the construction of a new bridge to carry Armory Street over the tracks of the New York, New Haven & Hartford Railroad Company. These proposals were opened at a meeting of the board at four o'clock on January 31, 1936. The board then voted to award the contract to A. L. Phelps, Inc., the lowest bidder, and to allow the contractor one hundred twenty days from the date of the execution of the contract within which to complete the work.

There was testimony that one Phelps, the treasurer of

A. L. Phelps, Inc., hereinafter called the contractor, went to the city hall on the morning of February 4, 1936, to attend a conference with the city and railroad engineers; that while there he received a slip of paper from one Phillips, the superintendent of the department of streets and engineering, upon which was written a telephone number; that he dialed the number and talked to Albert, who, after congratulating Phelps on being the low bidder, told him that the seventy-five days named in the proposal of the contractor was not long enough for a satisfactory job and that "I think it should be extended to 120 days, which we are perfectly willing to do. If this is done, why, we expect you to reciprocate." Albert then asked him where he intended to purchase "the performance bond" and Phelps replied that he had already arranged for the bond. Later, while attending the conference of these engineers, he was called to the telephone and Albert told him that the bond that was offered was not acceptable, in fact, no bond would be acceptable unless it was purchased through the office of Simons and Simons. Albert said that they did not like the surety company (which the contractor as shown by its proposal intended to have issue the bond to accompany the contract) "and that I [Phelps] better play ball or they would see that the contract was never signed." Phelps told Albert that he would take the matter up with the one who attended to his insurance. Phelps told Baldwin, who had charge of the contractor's insurance, about the conversations he had had with Albert. Baldwin, on the afternoon of February 4, 1936, telephoned to Albert and, after giving him his name and stating that he had charge of the insurance for the contractor and that he had learned from Phelps that Albert had said that the bonding company which the contractor intended to have as surety upon the bond was not acceptable to him, inquired of Albert what objections he had. Albert replied that this company was a nonconference company and that "it just wasn't acceptable." Baldwin directed his attention to the fact that this bonding company had given bonds to the national and State governments for amounts much larger than the bond

in the present case, and that the city of Springfield had accepted a bond from this company in a much larger amount than that of the proposed bond. Albert then said that this particular bonding company was not acceptable. Baldwin then asked him whether, if the full brokerage commission were given to Simons, Albert would accept the company, and he replied, "All right." Baldwin then telephoned to Simons informing him of Albert's objections to the bonding company and urging him to have Albert accept the bonding company, and told Simons he was to be the broker on the bond. Simons told Albert on February 6, 1936, about this telephone conversation with Baldwin, and that Simons was to receive the broker's commission on the bond. Simons advised Albert "to forget about the thing" as it "was not large enough for him to be so stubborn," and Albert replied, "All right." Baldwin paid the commission amounting to $35.73 to Simons on February 8, 1936.

There was further testimony that the contractor was furnished with copies of the contract on February 7, 1936, which it executed and filed with the bond in the office of the board, and that the contract was then executed by the city. On February 8, 1936, the contractor was notified that the contract had been awarded to it. There was other evidence which was in conflict with that we have mentioned but which it is not necessary to recite. The bill of particulars originally set forth that the defendant corruptly requested Phelps to secure a bond from Simons in consideration for the defendant's vote to award the contract to the contractor, *Commonwealth* v. *Albert,* 307 Mass. 239, but, after the first trial, the particulars were amended by alleging that the defendant made his request of Phelps to secure the bond from Simons as the consideration for the defendant permitting the execution of the contract.

Although the board had voted to award the contract to the contractor at its meeting on January 31, 1936, it was not until February 7, 1936, that the copies of the contracts had been furnished to the contractor for execution and delivery to the city, and they were not executed in behalf

of the city until after they had been executed by the contractor and delivered to the city.

The vote of the board did not constitute a contract but was a mere preliminary to the execution of a written contract. *Dunham* v. *Boston,* 12 Allen, 375, 377. Until the contract was executed in behalf of the city by the board, the board could rescind its vote and decline to execute the contract without incurring any liability to the contractor. *Edge Moor Bridge Works* v. *Bristol,* 170 Mass. 528. *Wheaton Building & Lumber Co.* v. *Boston,* 204 Mass. 218, 223. *John J. Bowes Co.* v. *Milton,* 255 Mass. 228. *Daddario* v. *Medfield,* 294 Mass. 438. The board was therefore in a position on February 4, 1936, when the Commonwealth contends the defendant told Phelps that the contract would never be signed unless Phelps complied with his request, to refuse to execute any contract for the construction of the bridge and thus deprive the contractor of any benefit that it would have derived from the contract. It could have been found that the contractor had learned from some person prior to February 4, 1936, that the board had voted to award the contract to it, and that at the time Albert made his request to Phelps it had the choice of acceding to the demand of the defendant or facing the possibility of losing an opportunity to enter into a contract with the city. *Lyman* v. *Robinson,* 14 Allen, 242. *Doten* v. *Chase,* 237 Mass. 218. *Zevitas* v. *Adams,* 276 Mass. 307. *Rosenfield* v. *United States Trust Co.* 290 Mass. 210.

The written information to bidders, which was furnished with the forms upon which they were to submit their bids, provided that, upon the failure of the contractor to execute a contract with the city within ten days of the acceptance of his bid and to furnish a bond satisfactory to the board, the city would deduct from the amount of the certified check accompanying the bid an amount equal to the difference between the amount of the bid that had been accepted and the amount of the contract finally awarded to another bidder. This provision gave the board the right to determine in good faith and sound judgment whether the bond was satisfactory in form and substance properly

to accomplish the purpose for which it was furnished. The judge could find that the defendant, before he voted to award the contract, knew from the contractor's bid that it proposed to furnish a bond from the particular surety company named in the bid; that the so called objections of the defendant to this surety company were withdrawn when Baldwin agreed to pay the entire commission to Simons, who did nothing that would entitle him to a commission; that the defendant's objections were a sham and a pretext, intended to compel the contractor to procure the bond from Simons and to require the payment of the broker's commission to the latter; and that the defendant thereafter executed the contract. The evidence was ample to warrant a finding that the defendant was not acting in good faith and that he was using the power of his office to force the payment of a gift or gratuity to Simons.

One inquiry is whether such a payment made in compliance with the request of the defendant would constitute a request for a gift or gratuity by the defendant within the meaning of the statute. G. L. (Ter. Ed.) c. 268, § 8. Of course, if Simons received the money for the use of the defendant, or if the latter was entitled to a part of it, then the conduct of the defendant would be violative of the statute. The collection of a bribe through an intermediary makes the public officer just as liable under the statute as if he personally received it. *Dolan* v. *Commonwealth,* 304 Mass. 325, 339. *Commonwealth* v. *Connolly,* 308 Mass. 481, 489. Simons testified that the defendant never requested any part of the commission and that he never made any payment to him on account of the commission. The defendant testified that he never knew until the first trial that any commission had been paid to Simons. There is no direct evidence that the defendant had any proprietary or pecuniary interest in the commission. The circumstances are suspicious and call for careful scrutiny. We are concerned not with the weight of the evidence, but as to whether there is any evidence, including the permissible inferences from the established facts, that will sustain a finding that the defendant has been shown beyond reason-

able doubt to have had such an interest in the commission. A careful examination of the record discloses nothing more than speculation, conjecture or surmise upon which such a finding could be based. This is insufficient to sustain the burden resting upon the Commonwealth. *Commonwealth v. Merrill*, 14 Gray, 415. *Commonwealth v. Stone*, 300 Mass. 160. *Commonwealth v. O'Brien*, 305 Mass. 393. *Commonwealth v. Carter*, 306 Mass. 141.

The statute, G. L. (Ter. Ed.) c. 268, § 8, carries its own definition of the crime that it has created. The statute imposes a penalty upon a municipal officer "who corruptly requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to him" as the price for official action that is to be taken by him. The words of the first part of this statute directly forbid the solicitation or acceptance by the officer for himself of any gift or gratuity. Then the statute reaches to the requesting or acceptance of a promise of a gift which is to be given to the officer, and finally the statute, in order adequately to thwart ingenious schemes and devices contrived and designed to pollute the public service, provides that a municipal officer shall not request nor accept a promise of the performance of any act beneficial to him. All these words of the statute must be given effect. *Commonwealth v. Snow*, 269 Mass. 598, 601, 602. *Commonwealth v. Corbett*, 307 Mass. 7, 10, 11. All of these various clauses must be construed together and each must be given full operation in its own respective field. In order to convict a municipal officer of requesting a gift or gratuity it must be proved that, if the request were granted and the gift or gratuity were transferred to him, he would acquire an interest in the thing received. The receipt of the gift or gratuity would also constitute a violation of that part of the statute which prohibits the acceptance of a gift or gratuity by him. The officer may be satisfied to request or accept a promise to make a gift to him and to receive payment after he has taken the particular official action that he has agreed to take. But there is another class of promises included in the statute from the performance of which no gift or gratuity as those terms are

used in the statute will result to the officer but from which a benefit will be derived sufficient to induce him to act corruptly. If the fulfillment of the promise results in the receipt of a gift or gratuity by a third person, not the agent of the officer, then the acceptance of such gift or gratuity by such third person would not be acceptance by the officer, but the statute does not require such acceptance by him for he can violate the statute by requesting the promise of performance of an act beneficial to him. The statute sets forth a series of acts, the commission of any of which will constitute a violation. The grouping of these acts into different classes must be observed. *Commonwealth* v. *Hogan*, 249 Mass. 555. *Hough* v. *Contributory Retirement Appeal Board*, 309 Mass. 534. *People* v. *Gibson*, 191 N. Y. 227. Statutes somewhat similar have been so construed in other jurisdictions. *State* v. *McDonald*, 106 Ind. 233. *People* v. *Hyde*, 156 App. Div. (N. Y.) 618.

The defendant, however, was further charged with requesting a promise to do an act beneficial to him. The evidence was sufficient to show that he sought a promise from the contractor to procure the bond from Simons as the price for executing the contract with it. The mere making of such a request for such a purpose would be a violation of the statute even if the contractor had refused to heed the request if the act, performance of which the defendant desired, was shown to be beneficial to him. *Commonwealth* v. *Murray*, 135 Mass. 530. *Commonwealth* v. *Donovan*, 170 Mass. 228. *Commonwealth* v. *Hogan*, 249 Mass. 555. *Commonwealth* v. *Albert*, 307 Mass. 239, 243. *Commonwealth* v. *Connolly*, 308 Mass. 481, 489.

A promise to do an act that would result in a pecuniary gain to the defendant would undoubtedly come within the scope of the statute. This may be the form that the promises may most frequently take, yet the purpose of the statute cannot be limited to promises of an act, the performance of which will confer a pecuniary benefit upon the public officer. It is enough if a reward or personal advantage will accrue to the officer from the performance of the act and

that he considers the value of that which he will receive so highly as to permit it to influence his official conduct, provided the thing to be acquired is in fact something of value as that term is generally understood in determining whether the thing requested or accepted constituted a bribe. See *Commonwealth* v. *Donovan*, 170 Mass. 228; *Caruthers* v. *State*, 74 Ala. 406; *People* v. *Borella*, 362 Ill. 218; *State* v. *McDonald*, 106 Ind. 233; *State* v. *Ellis*, 4 Vroom, 102; *People* v. *Willis*, 24 Misc. (N. Y.) 549; *Watson* v. *State*, 39 Ohio St. 123; *Osborn* v. *State*, 160 Tenn. 594. Of course, if all the officer intended from the performance of the act was the self satisfaction arising from the fact that he is empowered to command obedience or the sentiment that comes from conferring a kindness upon another, then he would not receive anything to which the law would attach value. *People* v. *Hyde*, 156 App. Div. (N. Y.) 618. *Randall* v. *Evening News Association*, 97 Mich. 136. The judge was not required to believe that the defendant's conduct was actuated entirely by his friendship for Simons. He was not bound to accept that as a plausible or adequate explanation of such unusual official action which persisted until Baldwin agreed to pay the entire commission to Simons, who, without the least semblance of right, agreed to and did accept the commission. The judge saw and heard Simons and Albert. Both of them appeared as witnesses. The judge could properly infer that the defendant had a motive other than his friendship for Simons. *Commonwealth* v. *Farmer*, 218 Mass. 507. *Commonwealth* v. *Hogan*, 249 Mass. 555. *Commonwealth* v. *Orler*, 252 Mass. 55. *Commonwealth* v. *Whitcomb*, 277 Mass. 27. It could properly be found upon the evidence together with the inferences, which need not be necessary or unescapable as long as they were reasonable and warranted, that it had been proved beyond a reasonable doubt that the defendant intended to receive from the procuring of the bond from Simons some personal advantage of value, and that the payment of a commission to Simons was an act beneficial to the defendant within the meaning of the statute. *Commonwealth* v. *Desatnick*, 262 Mass. 408, 413. *Commonwealth* v. *Alba*, 271 Mass. 333, 337.

*Commonwealth* v. *Bader,* 285 Mass. 574, 577. *Commonwealth* v. *Cavedon,* 301 Mass. 307, 315.

The first two assignments of error have been waived. The third, fourth, fifth and sixth assignments relate to the refusal of the judge to grant requests that the defendant was entitled to an acquittal upon the indictment, bill of particulars and evidence. No error was disclosed in denying any of these requests. The seventh, eighth, ninth, eleventh, twelfth and thirteenth assignments attack the rulings of the judge in refusing requests respectively to the effect that there was no evidence that the defendant either for himself or in general at any time requested from Phelps a gift, a gratuity, or a promise to make a gift. In this there was error for reasons already discussed. The tenth assignment of error raises the question whether the judge was wrong in refusing to rule that there was no evidence that the defendant requested from Phelps a promise to do an act for the benefit of the defendant. There was no error in the refusal of this ruling. The fourteenth assignment is based upon the refusal to rule that there was no evidence that any request made by the defendant to Phelps was made under any agreement or understanding that the defendant would vote in a particular manner. The action of the judge was free from error. The statute, G. L. (Ter. Ed.) c. 268, § 8, provides for the punishment of a municipal officer "who corruptly requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to him" under an agreement to perform an official act in a particular manner. The violation of such a statute may be proved by showing that the officer did any or all of the acts that the statute describes. *Commonwealth* v. *Hogan,* 249 Mass. 555, 564. *Commonwealth* v. *Martin,* 304 Mass. 320. *People* v. *Gibson,* 191 N. Y. 227. *People* v. *Clougher,* 246 N. Y. 106.

The indictment charges the defendant with committing the offence by making requests for all the various objects enumerated in the statute. The judge made no findings of fact other than a general finding of guilty. The evidence, as we have pointed out, was sufficient to sustain this con-

clusion if it was based upon that part of the statute denouncing the corrupt request of a promise to do an act beneficial to the defendant, but it cannot be supported upon any other ground. Our difficulty is that we do not know whether it was made on the proper ground or upon a ground that had not been proved, although the action of the judge in reference to the rulings tends to indicate that the finding of guilt was, in part at least, based upon the latter ground. A defendant has the right to have a judge apply the correct principles of law to the facts found, and where, as here, a defendant has requested rulings to the effect that there could be no conviction upon some of the grounds alleged in the indictment and they are improperly denied and a general finding of guilt is made without specifying the ground upon which it is made, there is error requiring a new trial. *Clarke* v. *Massachusetts Title Ins. Co.* 214 Mass. 31. *De Young* v. *Frank A. Andrews Co.* 214 Mass. 47. *Kaufmann* v. *Sydeman*, 251 Mass. 210. *Markiewicz* v. *Toton*, 292 Mass. 434.

*Judgment reversed.*