ABRAHAM KURINSKY *vs.* MARGARET E. LYNCH.
SARAH R. KURINSKY & another *vs.* SAME.

Suffolk.   November 20, 1908. — January 15, 1909.

Present: KNOWLTON, C. J. MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Practice, Civil,* Amendment. *Deceit. Fraud. Contract,* Validity. *Agency. Broker. Evidence,* Relevant to show fraud, Admissions by conduct.   *Witness,* Impeachment.

In the trial of an action for the alleged breach of an agreement in writing to convey certain real estate to the assignor of the plaintiffs free from incumbrances, where the answer consists of a general denial and does not allege fraud on the part of the plaintiffs, but early in the trial and thereafter the defense is relied on that the defendant's agreement to sell the property was obtained by fraud on the part of the plaintiffs, and the jury return a verdict for the defendant, it is within the discretion of the presiding judge to allow the defendant to amend his answer after the verdict by alleging the fraud relied upon in defense and shown by the evidence, and such amendment may be allowed as of a date before the trial, so as to make the evidence introduced upon that issue at the trial material and admissible.

False representations, fraudulently made to induce an owner of real estate to sign a contract to sell it, to the effect that the person named in the contract as such is the actual purchaser, relying on which the owner executes the contract, constitute a defense to an action on the contract against the owner for failing to convey the real estate free from incumbrances, brought by an assignee to whom the contract was assigned in pursuance of the fraudulent plan to deceive the defendant as to the identity of the purchaser.

No commission for procuring a sale of land can be earned by procuring a contract to sell it which the owner was induced to sign by fraud in which the person claiming the commission participated.

An agreement between the brokers representing the two sides of a transaction to share commissions can be made lawful only by the knowledge and assent of their respective principals.

In an action for a commission for effecting a sale of real estate of the defendant, where the defense relied upon was that the defendant was induced to sign the

---

* The case was taken to the Supreme Court of the United States by writ of error.

contract to sell the real estate by fraud in which the plaintiff participated, the fraud consisting in false and fraudulent representations that one L. named in the contract as the purchaser was to be the actual purchaser whereas it fraudulently was intended that K. should become such purchaser by an assignment from L., the plaintiff testified that it was his understanding that L. and·not K. had bought the property. On cross-examination the plaintiff made the admission that the defendant said to him, "If I had known that K. was buying the property or claiming a commission I never would have sold." The plaintiff did not testify to making any reply to this remark of the defendant. *Held*, that, not only was this testimony of the plaintiff on his cross-examination relevant to show that the signing of the contract was induced by fraud, but also the conduct of the plaintiff, in making no reply to the remark of the defendant and in expressing no surprise or dissent, was inconsistent with his previous testimony and tended to contradict him as a witness.

Two ACTIONS OF CONTRACT against the same defendant, Margaret E. Lynch, the first by Abraham Kurinsky for the alleged breach of an agreement in writing to convey to the plaintiff certain real estate in that part of Boston called Dorchester free from incumbrances, and the second by Sarah R. Kurinsky and Mary Blue for a broker's commission for effecting a sale of the same real estate. Writs in the Municipal Court of the City of Boston dated respectively June 19, 1906, and October 3, 1906.

On appeal to the Superior Court the cases were tried together before *White*, J. There was evidence tending to show the following facts :

About April 1, 1906, the defendant employed the plaintiff Blue to sell the real estate in question. At some time between April 10 and April 19, 1906, the plaintiff Blue reported to the defendant that she had a customer named Levy, who offered $18,000 for the property. She told the defendant that the plaintiff Sarah R. Kurinsky was going to bring the customer. The plaintiffs Sarah R. Kurinsky and Blue previously had agreed to divide a commission of two and one half per cent which the defendant agreed to pay if the sale actually went through. On April 21, 1906, an offer was made by Levy, which, upon being reported to the defendant, was refused by her; a few minutes later, the defendant's daughter, Mary E. Lynch, went to the house of the plaintiffs Kurinsky, where Levy, their relation, was staying, and said that her mother was willing to sell the property. A memorandum of sale then was written by the defendant's daughter, at the dictation of Levy and Kurinsky, and was signed

by the defendant's daughter as agent for the defendant, although she had no written authority to act in that capacity. On the back of this paper, without the knowledge of the defendant or her daughter, at some time during the same day, there was written by Levy an assignment of his interest to the plaintiff Abraham Kurinsky. The only consideration given by Kurinsky to Levy for this assignment was repaying to Levy the $500 deposit which had been given by Levy to the defendant. On April 24, 1906, the defendant signed a ratification of the memorandum of April 21, the ratification having been typewritten by the plaintiffs' attorney on another sheet of the same paper. In this ratification was inserted the word "representatives," which did not appear in the first memorandum.

The memorandum of sale referred to above was as follows:

"April 21, 1906.

"Received of Morris Levy Five Hundred Dollars on account of purchase price for houses number 36 & 38 no. 40 and 42 Fowler Street and 90 and 92 Erie Street land and stable for the whole estate of Mrs. Margaret E. Lynch to be deeded free and clear of all incumbrances. Price to be $17,500. Five Hundred of which to be paid today, and the rest in cash, on or within the first of June 1906. Commission to be given Miss Blue and Mrs. Kurinsky.

"Margaret E. Lynch.
By M. E. L."

"Received the check of Mr. Levy for $500.

"Margaret E. Lynch.
By M. E. L."

"Witness
"Mary E. Blue."

The subsequent memorandum signed by the defendant personally was as follows:

"I hereby acknowledge my two signatures above, and the receipt of said $500; and agree to convey said premises above mentioned, giving a good and clear title to the same, to said Levy or representatives, according to the above agreement, on or before June 1st, 1906, free and clear from all encumbrances. Witness my hand and seal this 24th April, 1906.

"Margaret E. Lynch."

Kurinsky employed a conveyancer to look up the title, who, finding it incumbered by building restrictions, reported that fact to the defendant and to Kurinsky, and had both of them in his office together for discussion of the matter. On June 1, 1906, the defendant tendered a deed to Kurinsky, which on account of the incumbrances was refused. On June 7 she returned the $500 deposit to Kurinsky and accepted a receipt signed by him, reciting "Received of Margaret Lynch $500, being amount of deposit under contract of sale, it being understood that I waive no rights under said contract and no rights to damage for its breach."

Kurinsky brought his action in the Municipal Court for breach of the contract to convey, setting forth a copy of the memorandum of the sale to Levy of April 21, the assignment of the contract by Levy to him dated April 21, and the memorandum of April 24 signed by Mrs. Lynch personally. Mrs. Kurinsky and Miss Blue brought their joint action in the same court to recover the commission. The answer in each case was a general denial. In the Municipal Court no defense resting on fraud had been made.

In the Superior Court, at the close of the evidence, the plaintiffs' counsel called the judge's attention to the fact that no amendment to the answer setting up fraud had been offered, and that he did not know what fraud was relied upon.

The plaintiffs asked the judge to make the following rulings:

"8. There is no evidence that the identity of the purchaser was a material element in the contract and if it was it became immaterial by the instrument of April 24.

"9. The defense of fraud, concealment or mistake is not open on the pleadings, and if it is, the burden of proof is on the defendant."

"3. An arrangement between brokers representing both sides respectively to share the commission is not unlawful.

"4. If Mrs. Kurinsky is not entitled to half the commission from the defendant because she was acting for the purchaser Miss Blue is entitled to the whole of it on the evidence.

"5. If the promise to pay Mrs. Kurinsky half the commission was without consideration Miss Blue is entitled to the whole commission."

In his closing argument the defendant's counsel did not contend that there had been a fraudulent conspiracy to induce the

defendant to sign an agreement free of restrictions for the purpose of obtaining an unrighteous cause of action against her; but contended that there had been a fraudulent concealment of the real purchaser

The judge refused to make any of the above rulings, and submitted the cases to the jury with other instructions.

In each case the jury returned a verdict for the defendant; and the plaintiffs alleged exceptions.

After the verdict the defendant filed in each case the following motion:

" Now comes the defendant and moves to amend her answer by adding the following:

" And the defendant says that she was induced to enter into the agreement set out in the plaintiff's declaration through the fraud and fraudulent representations of Levy and the plaintiff Abraham Kurinsky and their agents."

The verdict was returned on May 20, 1907. The motion to amend the answer was made later on the same day and was allowed by the judge as of May 17, 1907.

*J. E. Hannigan,* (*I. Fox* with him,) for the plaintiffs.

*F. P. Garland,* for the defendant.

BRALEY, J. If the original pleadings did not raise the issue, early in the trial the defense relied on was, that the contract whereby the defendant agreed to sell the property had been fraudulently obtained. But, with the understanding that amended answers should be filed, the trial proceeded, and the allowance of the amendments after verdict as of an earlier date was within the discretionary power of the court. *Cronan* v. *Woburn,* 185 Mass. 91.

In the first action, the plaintiff was an assignee within the purview of R. L. c. 173, § 4, and, a sale having been effected to Levy, until the defense of fraud had been pleaded, there was no evidence on which the defendant could impeach the contract, and the proof of her signature not having been required by the answers, the plaintiffs in both actions on proving performance on their part and a failure to perform by her would have been entitled to prevail. If, however, the defendant's evidence was accepted, she believed and understood that throughout the entire transaction she was dealing with Levy alone, to whom, acting by her daughter as agent, the written contract for a sale of the

real estate at first had been executed and delivered. The jury further could find, that, from the beginning of the negotiations, the acts and conduct of all the plaintiffs in procuring the first paper, which named Levy alone as the purchaser, the immediate assignment by him to Abraham Kurinsky, followed by the procurement from the defendant of a ratification in writing, with the important modification giving to Levy's appointee or assignee the right to a conveyance, the payment by Kurinsky of Levy's check received in part payment of the purchase price, were circumstances which tended to support her contention, that Levy never intended to buy and that the contract in its final form had been procured through the misrepresentations of all of them acting in concert. *Freedley* v. *French*, 154 Mass. 339. *Bliss* v. *New York Central & Hudson River Railroad*, 160 Mass. 447. *Gurney* v. *Tenney*, 197 Mass. 457. It is true that a few weeks later, upon ascertaining that the title was not clear, the defendant returned the money to Kurinsky which up to that time she had retained. But how far this delay, or her reading of the whole or a part of the paper before signing, tended, if at all, to show that the defense of fraud was an afterthought to avoid the payment of damages or brokerage, was also for the jury to determine under instructions to which no exceptions were taken. By their verdict for the defendant, they must have reached the conclusion that the defense had been established.

While there were two issues, one of which was whether the sale to Kurinsky was induced by fraud, yet the other, whether the plaintiffs in the second action were entitled to commissions, depended upon the first, for, if the contract was avoided by reason of the fraud in which they participated, there was no sale, and, if there was no sale, a commission had not been earned. *Trambly* v. *Ricard*, 130 Mass. 259, 261. *O'Donnell* v. *Clinton*, 145 Mass. 461, 462. *McNamara* v. *Boston Elevated Railway*, 197 Mass. 383.

The third, fourth and fifth requests, as the counsel for the plaintiffs suggest, accordingly are no longer material. The eighth request and the ninth, except as to the burden of proof which was given, were refused properly, and the instructions upon the questions raised correctly stated the law. In refusing the third no error was committed, as the request omitted the

important qualification that to be lawful an agreement between brokers to share commissions must be with the knowledge and assent of their respective principals. *Quinn* v. *Burton*, 195 Mass. 277. The testimony in cross-examination of the plaintiff Blue, which was finally admitted, that the defendant said to her, " if I had known Mrs. Kurinsky was buying the property or claiming a commission I never would have sold " was relevant after the defense of fraud had been pleaded. If the defendant had been deceived as she testified, this plaintiff had participated in the fraud. In her direct testimony she had said substantially that it was her understanding that Levy and not Kurinsky had bought the property. The conversation took place on the night of the sale, and when, after talking about the parties in terms which the jury might find were intended to mislead, the fact, that after the defendant had made the statement previously quoted the plaintiff made no reply and expressed no surprise or dissent, was conduct inconsistent with her other testimony and which tended to contradict her. *Reeve* v. *Dennett*, 137 Mass. 315.

*Exceptions overruled.*