## Commonwealth ex rel. v. Cunningham et al.

*John J. McDevitt, Jr.,* for Commonwealth.

*Schnader & Lewis, John Robert Jones,* and *George F. Blewett,* for defendants.

GORDON, P. J., June 7, 1938.—This case is before us on preliminary objections to a bill in equity. The bill is brought by the Commonwealth, upon the relation of the Attorney General, against the executors of the estate of former Sheriff Thomas W. Cunningham, deceased, and the surety on his official bond, to compel a discovery and accounting by defendants of moneys received by their decedent while he was Sheriff of Philadelphia County. These moneys consist of balances of deposits delivered to him by various litigants or their attorneys to defray the costs and expenses of advertising sales in mortgage foreclosures and other services in civil proceedings, and constitute a fund which is the property of the persons from whom the deposits were received, and which, at Mr. Cunningham's death, remained in his hands unclaimed by its owners. In addition to the accounting, the bill also prays for a decree directing compliance by defendants with the Act of April 8, 1937, P. L. 284, which requires such moneys to be paid over to the county treasurer for safekeeping, and ultimately to be escheated to the Commonwealth for the use of the county.

A sheriff is not required to render services in civil proceedings until he receives indemnity for, or prepayment of, his fees, costs, and expenses, and, as the exact amount of his expenses cannot be determined in advance, it has always been the custom of sheriffs, in lieu of demanding indemnity from litigants, to require them to deposit a sum slightly in excess of the estimated total costs and expenses of the service to be performed, and to refund any balance remaining after it is rendered and the actual expenses are known. These balances are small in amount, averaging less than $10 in each case. In many instances, however, the persons depositing the money fail to appear for a refund of the balances due them, and the accumulation of such uncollected balances during a sheriff's term of office creates a fund said to amount to many thousands of dollars, which belongs to a multitude of persons, and which is in the nature of unclaimed or abandoned prop-

erty. The custom which produces this result is of such antiquity and has been so universally followed by sheriffs that its validity is not open to question, and there is nothing about the transaction to justify the allegations of the bill that Sheriff Cunningham acted fraudulently in following the custom, especially since the Act of July 11, 1901, P. L. 663, as amended by the Act of May 23, 1923, P. L. 347, recognizes the practice and expressly provides that "any money advanced for his [the sheriff's] charges, and not earned or expended, shall be refunded to the payer thereof."

When Sheriff Cunningham died in August 1931, he was holding balances of this character aggregating several hundred thousand dollars, as averred in the bill and admitted by defendants for the purpose of the preliminary objections. This money, together with some additional funds of like character collected after his death, is now in the hands of his executors, who have not paid it into the county treasury as required by the Act of 1937, supra. That act provides that "whenever any moneys shall have been paid over to any county officer in any county of the first class which do not belong to such county officer," and after a certain period have not been returned to the "party legally entitled thereto", the officer shall pay them over with interest earnings thereon to the county treasurer "for safekeeping," giving the treasurer and the controller "a statement of the source from which such moneys were derived," and the names of those from whom he received it. The treasurer is required to keep such moneys "in a fund separate and apart from all other public moneys", and to pay it out only to the persons entitled to it "on warrant of the county controller after proof of claim to the [his] satisfaction". The act also provides that "The receipt issued by the county treasurer showing the payment over of such moneys shall fully discharge the county officer or person making such payment and his surety from all liability whatever for the payment of such moneys to the person or persons legally en-

titled thereto." And finally, the act directs that if no claim for the money is made within seven years from the time it is paid into the county treasury, it shall "be escheated to the Commonwealth for the use of the county" after notice of the intended escheat is given to the owners either directly or by advertisement.

The preliminary objections filed by defendants challenge the proceeding upon five grounds: First, that, if the Commonwealth has any right to enforce in the matter, it has an adequate remedy at law by mandamus; second, that the Commonwealth "is not asserting a sovereign right on its own behalf, but only for the vindication of alleged private rights", and hence its "unwarranted, unreasonable and unexplained" laches bars the action; third, that the averments of fraud contained in the bill are insufficient to support a recovery on such a basis; fourth, that the Act of 1937 upon which the suit is founded is in violation of article III, sec. 7, of the Pennsylvania Constitution, which forbids local or special legislation regulating the affairs of counties; and fifth, that it also violates the same article of the Constitution in that it "attempts to provide a special method for the collection of debts."

The first of these grounds of challenge, that the Commonwealth has an adequate remedy at law by mandamus, is without merit. The Commonwealth is uninformed respecting the state of the accounts of defendants' decedent, both as to the amounts due in each case and as to the persons to whom they are due. It is therefore entitled to have a discovery and an accounting upon those subjects. There might be some plausibility in the position taken by defendants on this objection, if the fund in question were a single fund of known amount and belonging to but one individual. In such a case the information necessary to enable a mandamus to be framed commanding the performance of a definite ministerial duty would be presently available. Here, however, that information

is in the exclusive possession of defendants, and can only be secured by an accounting. In addition, defendants are not themselves, and never have been, public officers. They have present custody of a fund which they found in the possession of their decedent, and which is no part of his estate, and as to such private individuals the jurisdiction of equity to require an accounting is undoubted.

With respect to the second objection to the bill that the action is barred by the laches of the Commonwealth, defendants mistake the basic theory upon which the suit is brought. They erroneously assume the Act of 1937 was passed for the benefit of the various persons who deposited the money with the sheriff and are entitled to its return, and that the suit is brought to enforce their rights. The Commonwealth is not suing in any such representative capacity. It sues to enforce an independent right of its own, created by the act, and which did not come into existence until 1937, when the act was adopted. As will be more fully shown hereafter, payment of the money into the county treasury "for safekeeping", and in aid and anticipation of an escheat to the Commonwealth, is the primary purpose of the legislation. The act does give the owners of the money the right to reclaim it from the treasurer before it is escheated to the Commonwealth. This, however, is merely an incidental provision, characteristic of all escheat legislation, and necessary to conserve for the owner his full rights of ownership. The right here sued on is that of the sovereign Commonwealth, exercised by the Act of 1937, to take charge of unclaimed or abandoned property, and to preserve it for the benefit of itself as well as of the owner. As to that distinct and separate right, the well-established rule applies that laches does not run against the Commonwealth. But even if laches could be imputed to the Commonwealth, there was none in the present case, for it would run only from the passage of the act which created the right of action, and not from 1931, when Mr.

Cunningham died. For both of these reasons defendants' preliminary objection to the bill on the ground of laches is without merit.

The third ground of objection to the bill, that the averments of fraud contained in it are insufficient to support a recovery on such a basis, is technically well taken. A mere averment that there was fraud in a transaction is an averment only of a conclusion, and to support an action on such a ground facts and circumstances sufficient to support the averment must be set forth in the pleading. No such circumstances are averred here. As we have already pointed out, the custom of sheriffs to require advance deposits on account of their necessary expenses, which produces unexpended balances, is neither unlawful nor fraudulent, and as the bill bases the charge of fraud only upon this custom, it shows no right of recovery on that ground. Theoretically, therefore, this objection is sound, and were it the only ground upon which the suit is based, we would unhesitatingly sustain it. It is not necessary to do so, however, because, if the bill is otherwise well grounded, defendants will not be required to answer the vague and inadequate averments of fraud which it contains.

As we understand the position taken by the learned counsel for defendants, the fourth ground of objection to the bill is in the alternative. It is contended on the one hand that the Act of 1937 is not an act regulating an affair of a county, and on the other that, even if it is, it violates article III, sec. 7, of the Constitution prohibiting local or special legislation regulating the affairs of counties. We cannot agree with either of those contentions. In our judgment the act clearly deals with one of the affairs of county officers, as that phrase is used in the Constitution. While it may be conceded that the balances here in question were never the property of the Commonwealth, that they represent no part of the sheriff's official fees, and that, in receiving and expending the

deposits of which they are the residuum, he acted as agent of the persons making the deposits, we think they sufficiently partake of, and are so connected with, his official life and activity as to fall fairly within the constitutional provision under consideration. The money is paid to him because he is sheriff, to defray expenses incurred in the performance of his official duties, and it is as sheriff that he is given the right to demand the deposit. Provisions of the Constitution should be liberally construed, and the language employed receive its usual and popular connotation, in order that full effect may be given to the instrument which is the direct expression of the will of the people. Applying this cardinal rule of constitutional interpretation to the language of the section in question, it is manifest that an act which touches upon and regulates any activity of a county official is a regulation of an "affair of the county", and hence that the act before us, which controls the disposition of money deposited with a sheriff in the course of his dealings with those transacting official business with him, is a regulation of a county affair.

This is clear, and we think it is equally clear that the amendment to the Constitution of November 6, 1923, P. L. 1119, art. III, sec. 34, saves the act from the constitutional prohibition against local and special legislation regulating the affairs of counties. That amendment provides:

"The Legislature shall have power to classify counties . . . according to population, and all laws passed relating to each class . . . shall be deemed general legislation within the meaning of this Constitution".

It was held in the case of Retirement Board of Allegheny County v. McGovern et al., Commrs., 316 Pa. 161, that the Act of July 10, 1919, P. L. 887, which divided the counties of the State into eight classes for legislative purposes, was a valid exercise of the legislature's power to classify counties under the foregoing amendment. The act before us follows that classification. It does not itself

classify counties differently, or specially, for its own purposes, and when the legislature, in passing the act, followed the uniform classification established by the Act of 1919, supra, which was held to be valid and constitutional in the case just cited, it cannot be charged with having unconstitutionally exercised its powers to classify counties: Commonwealth ex rel. v. Wert et al., 282 Pa. 575; Graeff v. Schlottman et al., 287 Pa. 342; Tranter v. Allegheny County Authority et al., 316 Pa. 65.

We cannot agree with the contention of defendants that because the number of living former sheriffs is fixed and there are only two or three individuals to which it can ever apply, the act is special legislation so far as it applies to former sheriffs. The mere fact that the number of persons embraced within a particular classification is limited and small does not render it invalid. If the basis of the classification is inherently reasonable and supported by a genuine distinction in the subject matter classified, the legislature's exercise of its undoubted power is justified: Wheeler et al. v. Philadelphia et al., 77 Pa. 338; Graeff v. Schlottman et al., supra. The only further requirement is that all who fall within the created class, whether they be many or few, shall be included in the operation of the law. If they are not, such a subsidiary and internal classification would undoubtedly invalidate legislation based upon it. This being so, the inclusion of former county officers in the operation of the act saves it from the constitutional ban against special legislation. The object of the act is to reach a certain kind of escheatable property, and so it embraces all persons who now have, or may hereafter acquire possession of such property in a present or past official capacity. The act is altogether prospective in its operation, for possession of the property at the time it is to be turned over to the treasury determines the classification, and had former county officers not been included in it, its constitutionality would have been open to serious question.

This brings us to defendants' fifth and last ground of objection to the bill, namely, that the act violates article III, sec. 7, of the Constitution, in that it "attempts to provide a special method for the collection of debts". Of course, the fact that the act does not violate the Constitution in one particular will not save it, if it does so in another. The amendment of 1923, supra, which authorized the classification of counties according to population, would not justify the passage of an act which violates other provisions against local or special legislation. Hence, if the Act of 1937 creates a special method for the collection of debts, it would be inoperative. Does it deal with debts at all? We cannot agree that it does. The test as to whether a particular transaction involving the delivery of money or other property to another gives rise to a debtor-creditor or a fiduciary relationship is whether, by express agreement, or from the circumstances accompanying the transfer, it becomes the property of the person who receives it, to be dealt with as his own, while the original owner must look to the general credit of the other to recover its value, or whether ownership of the property transferred remains in the transferror at all times while it is in possession of the transferree, whose only duty with respect to it is to apply it to the purposes for which it was received or to return it to the owner. If the first of these alternative situations exists in a given case, a debtor-creditor relationship arises; if the latter, a fiduciary relationship has been created. Applying this test to the case before us, it is apparent that Sheriff Cunningham held the balances in question in a fiduciary capacity. He received the litigant's deposit to expend as the latter's agent and on his behalf. He had no right to deal with any part of it as his own, and was obliged, not only because of the nature of the transaction, but also by the express mandate of the Acts of 1901 and 1923, supra, to refund the unexpended balance to the owner. The basic fiduciary character of the relationship is not affected by the fact that an unlawful conversion of the money to the sheriff's own use

might give rise to a right of action against him in assumpsit, as for money had and received to the owner's use. We frequently administer equity under common-law forms, and the form of the action to which a defrauded litigant may resort is not always the ultimate criterion of the fundamental nature of his rights. If A gives B $100 to pay a bill and return the balance, B holds the balance after the bill is paid as agent for A, and any use made of it by B except to return it to A would be a clear embezzlement. Such a relationship is identical in its nature with that between the sheriff and a litigant in the instant case. For this reason alone the constitutional provision against special legislation creating new methods for the collection of debts does not apply to the Act of 1937.

But we think this section of the Constitution is inapplicable for another and more fundamental reason. As we have heretofore observed, defendants misjudge the true character of the act. It may be conceded that it is not in itself an escheat act, for it merely directs escheat proceedings to be begun at the end of seven years. Its real object is to conserve apparently abandoned property for the benefit of the Commonwealth and the owner until the escheat occurs. In this respect it is identical in purpose with the Act of April 17, 1872, P. L. 62, which deals with unclaimed savings bank deposits in a manner closely analogous to that of the present act, and which was held to be constitutional in the case of Commonwealth v. Dollar Savings Bank, 259 Pa. 138. That act required savings banks to pay deposit accounts which had not been increased or diminished for a period of 30 years into the State treasury, gave the owners of such accounts a right of action against the State to recover them, and provided that the receipt of the treasurer for such deposits should discharge the bank from any further liability to its depositor. In discussing the character of that act, the Supreme Court, speaking through Mr. Justice Moschzisker, pointed out that the statute "is not an escheat act. In other words, it does not provide for seizing property pre-

sumed to be without an owner, but rather for the taking into possession by the sovereign Commonwealth, for the protection of both State and owner, of a certain class of property which is subject to escheat. . . . The rights of the owner are amply protected by giving him a cause of action against the Commonwealth (into whose general funds the money was to be paid), with full provision for legal proceedings and final process, under which he or his legal representatives may recover the amount of the deposit upon proof of identity. This is neither depriving the depositor of his property nor taking it for public use within the meaning of either the federal or state Constitutions." The same opinion also held that "it is well established that every sovereign state has jurisdiction to take charge of apparently abandoned or unclaimed property: Cunnius v. Reading School District, 206 Pa. 469; s. c., 198 U. S. 458; Attorney General v. Provident Institution for Savings in Town of Boston, 201 Mass. 23; s. c., 221 U. S. 660." See also In re Escheat of Moneys in Custody of United States Treasury, 322 Pa. 481.

The Act of 1872, supra, gave the depositor an unlimited right of action against the State to recover his deposit, and in that respect it differs from the Act of 1937. This difference, however, does not affect the question before us. In seizing the deposit under the Act of 1872, the Commonwealth appropriated the depositor's property to its own use, and the full right of action to recover it, which the act gave him, was held to adequately preserve his property in it, and to save the legislation from being a taking of private property for a public use. On the other hand, the Act of 1937 works no immediate conversion of the litigant's property when it is paid into the county treasury. It remains his, and can be repossessed by him at any time before it is finally escheated, upon demand and proof of his identity as its owner. It is merely received and held for him by the county treasurer, earmarked and segregated from the public funds, to be later escheated under the Acts of April 17, 1869, P. L. 71, and May 16, 1919,

P. L. 169, which provides generally for the escheating of unclaimed funds in the hands of fiduciaries. We can see no constitutional objection to such a procedure.

Defendants' contention that the act impairs the obligation of the contract between the litigant and the sheriff because it forces another debtor on the litigant, who cannot be compelled to surrender his right against the sheriff, is untenable for two reasons. In the first place, it merely compels him to resort to another depository, where he will find his property in "safekeeping" awaiting his claim to it; and even if the county treasury be considered as another debtor, as was said by Mr. Justice Drew in Poor District Case (No. 2), 329 Pa. 410, 417, "that such legislation, providing a 'substantial equivalent' for the obligations of the extinguished district [the sheriff], does not impair the rights of its creditors is no longer open to serious question." And in the second place, this objection to the act cannot be raised by these defendants, for they are not affected by this feature of it, since payment of the money into the treasury discharges them of all liability to the person from whom the sheriff received it. One will not be heard to attack the constitutionality of legislation unless he is himself affected by the particular feature complained of: Turco Paint & Varnish Co. v. Kalodner et al., 320 Pa. 421. Of course, if the owner could ignore the act because it is unconstitutional as to him, and sue defendants after they had paid the money over to the treasury, they could be heard to assert its unconstitutionality. This the owner could not do, however, for it would be a complete answer to such a suit that the money had been surrendered to the county treasury in obedience to the mandate of the law.

"In other words, even if it be conceded that, after the lapse of thirty years, the depositor or his legal representatives might still have a right to sue the bank [the sheriff], yet, since the State has full jurisdiction to take over the custody of apparently abandoned property, the

receipt of its treasurer, when produced by the defendant bank, would be a sufficient answer to such an action; hence, the bank cannot be in any wise prejudiced by the alleged unconstitutionality of the limitation": Commonwealth v. Dollar Savings Bank, supra, p. 149.

The inherent soundness of the principle which debars one who is not affected by a statutory provision from questioning its constitutionality is strikingly illustrated, and the necessity for its consistent application is emphasized in the present case, when we consider the further contention of defendants that the act is unconstitutional as to them, because, by compelling them to pay the money into the county treasury, it deprives them of the right, should the owner hereafter appear and demand his property, to retain it and plead the statute of limitations in a suit for its return. In one breath they claim that the State cannot take it from them as abandoned property because to do so would impair the contractual rights of the owner to reclaim his property from them, and in the next, they deny the right of the State to take it because to do so would also deprive them of a supposedly matured right, by pleading the statute, to defeat any attempt by the owner to recover it from them. By advancing both arguments, they indicate on the one hand an apparent intention to keep, if they can, what does not belong to them, and on the other, disclose the empty sham of their pretended solicitude for the contractual rights of the person from whom their decedent received the property and to whom he was in duty bound, under both the common law and the statute, to return it. Such a proposition is startling in its implications, and cannot be supported either by legal reason or by ethical consideration. The right to plead the statute of limitations to avoid the performance of a duty may be a necessary rule of public policy to protect persons who might be injured by the loss of evidence of a just defense through lapse of time, but it was never intended to create a new and substantive

property right in what concededly is not, and never was, the property of those for whose protection the statute is designed. It debars one from asserting a right, but it does not obliterate the right itself. It is a defense to actions which otherwise may be well founded, but there its function stops. It cannot be allowed to work an actual change of legal ownership to the defeat of the rights of the sovereign over abandoned property. As was said in Campbell et al. v. Holt, 115 U. S. 620, 629:

"We can understand a right to enforce the payment of a lawful debt. The Constitution says that no State shall pass any law impairing this obligation. But we do not understand the right to satisfy that obligation by a protracted failure to pay. We can see no right which the promisor has in the law which permits him to plead lapse of time instead of payment, which shall prevent the legislature from repealing that law, because its effect is to make him fulfill his honest obligations."

Paraphrasing this language, it can be said with equal force that we can see no right which the custodian of another's property has in the law permitting him to plead lapse of time rather than performance of his duty to return it to the owner, which prevents the legislature from conserving and ultimately escheating it to the Commonwealth because the effect of doing so is to deny him the right to avoid his honest obligation to return it. The funds in question here never belonged to defendants or their decedent. In that respect they are very much in the position of stake-holders, and the statute of limitations would be perverted from its real purpose if we permitted it to be used to destroy the Commonwealth's right to escheat the property and thereby to permanently enrich those to whom it never belonged.

For the foregoing reasons the preliminary objections are overruled, with leave to defendants to answer over within 30 days.