ROBERT Q. JENNINGS vs. JOHN H. MURPHY.

Middlesex.   October 4, 1949. — February 8, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Contract*, What constitutes, Parties, Between brokers, Performance and
breach, Validity.   *Broker*, Contract to share commission, Fraud of
broker.   *Agency*, Agent's duty of fidelity.   *Fraud*.

In an action by one real estate broker against another to enforce an
alleged express agreement to share equally in a commission to be paid
in bringing about a certain sale, a verdict for the plaintiff was war-
ranted by oral testimony and by correspondence in evidence that such
an agreement was made; that, although at the time of the making
of the agreement and during a part of six years consumed in con-
summating the sale, the plaintiff was associated in business with and
was an officer of a corporation, dealings with the defendant were by
him individually; that the agreement did not define what each party
should do toward consummation of the sale; and that, although most
of the work in bringing about the sale was performed by the defend-
ant, the plaintiff participated therein and performed his part of the
agreement.

An agreement between brokers to share commissions is not unlawful per
se, but is so only if made in circumstances which show a violation of
the duty of fidelity owed by agent to principal.

A finding that an agreement between real estate brokers to share a com-
mission for bringing about a certain sale was unlawful was not re-
quired where there was no evidence that the arrangement as to com-
mission was concealed from their principal or principals.

CONTRACT.   Writ in the Superior Court dated Novem-
ber 4, 1944.

The action was tried before *Good*, J.

*H. R. Bygrave*, for the defendant.

*E. Burke*, for the plaintiff.

SPALDING, J.   This is an action of contract to recover one
half of a broker's commission received by the defendant in
connection with the sale of a store in the city of Lowell.   The
declaration contains two counts.   The first count alleges an
express contract between the plaintiff and the defendant to

share equally the commission received by the defendant. In the second count the plaintiff seeks to recover his share of the commission under an account annexed. The case was submitted to a jury who found for the plaintiff on the first count and for the defendant on the second. The defendant's exception to the denial of his motion for a directed verdict, presented at the close of the evidence, brings the case here.

The following facts could have been found: The plaintiff and the defendant were real estate brokers. The defendant's place of business was in Lowell. From 1935 until November, 1941, the plaintiff's place of business was in New York city. Until sometime in 1938 he was associated there with a corporation (William B. Nichols & Co., Incorporated) of which he was a vice president. All of the real estate business of that corporation was transacted through the plaintiff, who was the only person connected with it who had a broker's license. Sometime in 1938 the plaintiff severed his connection with that corporation and went into business with one Rogers. The plaintiff and Rogers conducted a real estate business under the name of Jennings & Rogers Company in New York city until October or November, 1941, when the plaintiff moved to Atlanta, Georgia, where he opened a real estate office of his own.

In December of 1935, or in January, 1936, the defendant consulted the plaintiff concerning a certain store in Lowell called the Pollard store, which the owners had employed him to sell, with a view to selling it to the Allied Stores Corporation, hereinafter called Allied, for which the plaintiff and the Nichols company had acted in connection with matters pertaining to real estate. The plaintiff told the defendant that the usual broker's commission would be expected in this or in any other case and that "we would divide commissions 50/50." The plaintiff stated that he would be willing to assist the defendant on the basis of the usual brokerage commission. In February, 1936, the plaintiff went to Lowell and conferred with the defendant and the owners of the Pollard store. Later that year he went to Lowell with one Puckett, president of Allied, and showed him the Pollard

store and also another store in Lowell called Bon Marche. Puckett preferred the Bon Marche store, and at a conference with the defendant in November or December, 1936, the plaintiff informed him of that fact and asked whether he would be interested in working on the store with him, and the defendant said that he would. During the period between 1936 and 1938, the parties were concerned chiefly with negotiating a sale of the Pollard store. Thereafter the parties carried on an extensive correspondence with each other with respect to the sale of both the Pollard store and the Bon Marche. Finally the Bon Marche store was sold to Allied in May, 1942, and the defendant received from Bon Marche a commission of one hundred eighty shares of the cumulative preferred stock of Allied, the value of which, it is agreed, is $12,772.80. The plaintiff, upon learning of the sale, requested the defendant to pay him his share of the commission but the defendant refused to do so. Facts in addition to those stated above will be mentioned as occasion requires.

The defendant's motion for a directed verdict was rightly denied. The jury could have found on the evidence that an express agreement was entered into in December, 1935, or January, 1936, whereby the parties agreed to work together on the Pollard matter and that in that case, or in any other, they would share commissions on an equal basis. When asked on cross-examination whether he had an absolute agreement with the defendant to be paid one half of any commission that the latter might receive in connection with the Bon Marche matter, the plaintiff replied, "That is my recollection." Confirmation of such an agreement may be found in the correspondence between the parties. A letter dated November 4, 1940, written by the defendant to the plaintiff contains the following: "I spent the greater part of last Friday afternoon with Mr. Wenigman of the Bon Marche Company discussing the proposition of the sale of his company. . . . He asked me if, in the event of a sale for part cash and part stock, *we* would expect all cash as *our commission* and I told him, *subject to your approval*, that *we* might consider five per cent of the cash payment and five

per cent of the stock" (emphasis supplied). In a letter dated November 8, 1941, from the defendant to the plaintiff the defendant, after suggesting a possible course of action concerning the Bon Marche negotiations, stated, "However, I will not make any move until I hear from you and get your opinion in regard to the matter."

The defendant argues that if there was an agreement with respect to the commission it was made between him and the Nichols company, of which the plaintiff was an officer, rather than with the plaintiff individually. Concerning this contention the following facts could have been found. The defendant at all times dealt with the plaintiff personally and with no other member of the Nichols company. The plaintiff was the only person connected with the corporation who had a real estate broker's license and, so far as appears, all its real estate business was transacted by the plaintiff. All communications down to 1940 were sent by the defendant to the plaintiff at the address of the corporation. Thereafter they were sent to the plaintiff personally at the office of Jennings & Rogers Company. After the plaintiff moved to Atlanta the defendant continued to communicate with him there in his individual capacity. At a conference between the plaintiff and the defendant in New York in September, 1940, the defendant asked the plaintiff if it was true, as had been reported, that he was not handling Allied's real estate any longer, and the plaintiff replied that it was. The defendant then asked the plaintiff "what effect that might have on the deals we had up with Allied." The plaintiff stated that it would have no effect and that he knew Puckett and Allied well enough so that if "we had anything they . . . were interested in . . . [they] would deal with us." The jury could have found from this testimony that the agreement was made with the plaintiff individually.

The defendant further argues in effect that, even if there was an agreement to share commissions, the plaintiff under it was obliged to do something toward effecting the sale and that he did nothing. That contention is not borne out by the evidence. There does not appear to be anything in the

agreement entered into by the parties which purports to define what each should do. It is true that most of the work in bringing about the sale was done by the defendant. But it cannot be said that the plaintiff did nothing. In the fall of 1936 he went to Lowell with Puckett and showed him the Bon Marche store, and it was from the plaintiff that the defendant learned of Puckett's interest in that store. Sometime in 1936 or early in 1937 the plaintiff had one or more conversations with Puckett on the subject of the Bon Marche store. On several occasions the plaintiff wrote to the defendant suggesting things to be done in connection with the negotiations. Pursuant to a suggestion made by the defendant in a letter dated November 8, 1941, after the Bon Marche negotiations had lain dormant for some time, the plaintiff on November 12, 1941, wrote to Puckett asking if he could send a real estate broker friend in to see him about a department store that was for sale, and obtained Puckett's permission to do so. The plaintiff informed the defendant of this fact and outlined in considerable detail what ought to be done in approaching Puckett and what information should be furnished him. The defendant shortly thereafter got in touch with Puckett and as a result of negotiations between him and the defendant a sale of the Bon Marche store was consummated on May 1, 1942. The extent of the plaintiff's activity in the negotiations immediately preceding the sale appears to have been with the full knowledge and approval of the defendant.[1] The jury would have been warranted in finding that the plaintiff performed his part of the agreement.

Finally, relying on cases such as *Quinn* v. *Burton*, 195 Mass. 277, and *Kurinsky* v. *Lynch*, 201 Mass. 28, the defendant argues that to be lawful an agreement between brokers to share commissions must be with the knowledge and assent of their respective principals, and that there was no evidence that either Bon Marche or Allied knew of the

---

[1] The defendant in his letter of November 8, 1941, suggesting that the plaintiff take up the Bon Marche matter with Allied, stated, "and upon advice from you I could follow them [up] in New York."

agreement. But an agreement between brokers to share commissions is not unlawful per se. *Alvord* v. *Cook*, 174 Mass. 120, 128. Such agreements are illegal if, and only if, they are made in circumstances which show a violation of the duty of fidelity owed by the agent to his principal. Here it does not appear that the agreement between the plaintiff and the defendant was made in violation of that duty. Except for the bald statement that the commissions were to be shared equally, the record tells us virtually nothing as to the details of the transaction. A finding was not required that each broker here was acting for a different principal. But even if it were found that two principals were involved, there is nothing to show that the arrangement touching commissions was concealed from them. "Fraud, which is generally a question of fact, is never presumed but must be proved by the party who relies upon it." *Toy* v. *Green*, 319 Mass. 354, 360. We cannot say on this record that the agreement was unlawful.

*Exceptions overruled.*